## McCray et al. *v.* Pittsburgh Railways Company et al., Appellants.

Argued April 25, 1938.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER and RHODES, JJ.

*D. H. McConnell,* with him *J. R. McNary,* for appel-
lants.

*M. H. Hirschfield,* of *McCrady, McClure, Nicklas &
Hirschfield,* for appellees.

OPINION BY RHODES, J., July 15, 1938:

Appellant questions the action of the court below in
refusing its motions for judgment in its favor not-
withstanding the verdicts and for a new trial, and in
entering judgments on the verdicts in favor of plaintiffs.
We are of the opinion that the court below made proper

disposition of appellant's motions, and that the judgments entered must be affirmed.

The testimony as to the happening of the accident, resulting in injury to minor plaintiff, is sharply conflicting. However, the jury having resolved the conflicts in favor of plaintiffs, we are obliged to view the testimony in a light most favorable to them in passing on the first assignment of error, which relates to the refusal to enter judgment n. o. v. for appellant.

When so considering the testimony, it appears that James McCray, the minor plaintiff, a newsboy, on February 9, 1934, at the time within six weeks of his 14th birthday, boarded appellant's street car at Fifth Avenue and Dinwiddie Street, in the City of Pittsburgh. He wore a badge which entitled him to enter and sell papers on certain street cars in that city, including the one which he entered on this occasion. He sold a number of papers to the passengers as the car proceeded on its trip; and he was standing behind the motorman intending to alight at the car stop at or near Robinson Street, but the car failed to stop. The motorman, looking back, saw minor plaintiff on the car and began to holloa "Hurry, get off," "Hurry and get the hell off the car," and "Get the hell out of the car." Without stopping the car, the motorman thereupon opened the front doors, and minor plaintiff, at a point between Robinson Street and Craft Avenue, jumped out in front of a passing automobile, and was severely injured. As to the happening, minor plaintiff testified in part: "Q. What happened when the street car got up around that section? A. Well, I came back up to the door to get off. Q. Then what happened? A. Well, I got to the door and I waited a while, intending to get off at the stop and the conductor told me—turned around and told me, 'Hurry, get off,' but I was scared, and I wanted to get off. Q. What did you do? A. So I don't remember what I did after that: I was scared when he hollered

like that: many of them don't holler, they say, 'Hello.' Q. How did he holler at you? A. Well, he muttered in an undertone voice loud enough for me to hear and told me for me to get the hell out of the car. Q. Was the door open? A. When? Q. When he said that? A. They weren't open when he said it but he slammed them open. ...... Q. Did you tell him you wanted [to get] off there? A. I didn't tell him nothing: he looked back and saw me and then went to cursing. Q. Went to cursing? A. Yes. He hollered at me and the car was still going when he hollered. Q. He looked back at you and said what? A. He told me to hurry and get the hell off the car. Q. Was the street car running at that time? A. Yes. Q. It was past the Robinson Street stop, was it? A. Yes, sir. Q. Then he opened the door? A. Yes. Q. And you did what. A. I don't remember nothing after that. I just looked back and that is all I remember."

The driver of the automobile which struck minor plaintiff, who was brought in as an additional defendant (the jury finding in his favor), testified that, as he was in the act of passing the street car, which was in motion, minor plaintiff suddenly jumped out and landed in the street directly in front of his automobile.

It is conceded that minor plaintiff was permissively on appellant's street car, and was a licensee. It was the duty of appellant and its employees not to frighten or force minor plaintiff to alight when the street car was moving. This would have been true even if minor plaintiff had been a trespasser. *Minute v. Philadelphia & Reading Ry. Co.*, 264 Pa. 93, 96, 107 A. 662; *Biddle v. Hestonville, Mantua & Fairmount Passenger Ry. Co.*, 112 Pa. 551, 4 A. 485. In *Thomas et ux. v. Southern Pennsylvania Traction Co.*, 270 Pa. 146, at page 148, 112 A. 918, the applicable rule was expressed as follows: "Although a boy is a trespasser he cannot lawfully be forced from a moving vehicle, by fright or otherwise

*(Petrowski v. Phila. & R. Ry. Co.,* 263 Pa. 531 [107 A. 381] ; *Enright v. Railroad Co.,* 198 Pa. 166 [47 A. 938] ; *Brennan v. Merchant & Co., Inc.,* 205 Pa. 258 [54 A. 891] ; *Hyman v. Tilton,* 208 Pa. 641 [57 A. 1124] ; *Levin v. Traction Co.,* 194 Pa. 156 [45 A. 134] ; *Same v. Same,* 201 Pa. 58 [50 A. 225] ; *Pittsburgh, A. & M. Passenger Ry. Co. v. Caldwell,* 74 Pa. 421), and this is emphatically true where he must land in the cartway of a city street."

In *Enright v. Pittsburg Junction Railroad Co.,* 198 Pa. 166, 47 A. 938, a boy of ten years, in company with two other boys, boarded a freight train of defendant company, which was not in motion. The boys remained on the train after it started, when a brakeman saw them. He waved a stick and holloed at them. Finally the Enright boy, through fear, attempted to get off the train while it was moving rapidly, and fell under the wheels of the car on which he was riding, and as a result was seriously injured. Although in this case the boy was a trespasser and had no right to be on defendant's train, in an opinion by Mr. Justice MESTREZAT, at pp. 169, 170, the Supreme Court said: "It does not follow that the defendant by its employees could eject the boy from the train or cause him by fright or fear to leave the train while in rapid motion so as to endanger his life. The child being on the train and it running at a rapid speed, it became the duty of the defendant and its employees not to eject him. This duty arose from the circumstances. The failure to observe it was 'a want of ordinary care under the circumstances,' which is negligence. The brakeman knew the train was in motion and hence saw the danger which must result from his conduct if the boy attempted to leave the train. His act was done, therefore, with full knowledge of the peril in which it placed the child. Consequently the defendant through its employee disregarded a plain duty which resulted in the painful and serious injury of the plain-

tiff's son." Minor plaintiff was not only permissively upon the street car, but the motorman, who was operating the car, was fully aware of his presence. The latter was bound to know the danger to which minor plaintiff would be subjected if he were compelled to alight from the moving car. "The cause of the boy's injury, therefore, is directly attributable to the negligent act of the defendant's employee in frightening him so that he attempted to quit the train in the face of imminent danger": *Enright v. Pittsburg Junction Railroad Co.,* supra, 198 Pa. 166, at page 170, 47 A. 938, at page 939. Such conduct of the motorman is viewed in law as "intentional" or "wilful and wanton." *Petrowski et al. v. Philadelphia & Reading Railway Co.,* 263 Pa. 531, 536, 107 A. 381. In the Petrowski case, supra, at page 537, it was also held: "In cases of this character, involving alleged negligence towards children trespassers of tender years, the test is neither reckless conduct nor gross negligence, but lack of due care under the circumstances."

Appellant's first assignment of error complains that the court below erred in overruling appellant's motion for judgment n. o. v. In support thereof it is argued that plaintiffs are not entitled to recover, as there was no commission of an overt act by appellant's motorman which resulted in injury to minor plaintiff.

It is to be observed that appellant's motorman accompanied his demands, that minor plaintiff leave the street car, with the opening of the car doors near which minor plaintiff was standing in the front of the car.

It was not essential, in order to establish appellant's liability, to prove that minor plaintiff was subjected to actual force, or struck with any instrumentality, by appellant's employee, as the result of which he was frightened or forced to alight from the moving street car; nor was it required to be shown that he was actually threatened by overt acts by the motorman to use

force. See *Biddle v. Hestonville, Mantua & Fairmount Passenger Ry. Co.*, supra. The motorman's demands, and the manner in which they were made, accompanied by the opening of the car doors, which could not have failed to convey to minor plaintiff a significant implication, were sufficient from which the jury could find that minor plaintiff acted under a reasonable apprehension of bodily harm, or the use of force upon him, unless prevented by his flight. See Restatement of Law, Torts, §24.

It was for the jury to determine what occurred. Minor plaintiff testified that the street car was in motion when, by such conduct of the motorman, he was scared and jumped off. The jury having found from all the evidence that the conduct of appellant's motorman so scared or frightened minor plaintiff that he alighted from the moving street car in the manner testified to by him, appellant was liable for his resulting injuries, and the verdicts cannot be disturbed.

The second and third assignments of error relate to the refusal of appellant's motion for new trial. The only reason which has been argued is that the verdicts were against the weight of the evidence. It is urged that it was error to refuse appellant's motion, as three disinterested and intelligent witnesses testified that the street car had stopped at Robinson Street, and that minor plaintiff had alighted and was in the street when struck by the automobile of the additional defendant. This was also the testimony of the motorman. The jury accepted plaintiffs' version as to the happening of the accident. This was within the province of the jury, as it is "the only tribunal under our administration of the law authorized to dispose of the controverted facts": *Ginsberg v. Philadelphia Rapid Transit Co.*, 66 Pa. Superior Ct. 118, at page 120. "The preponderance of the evidence depended upon the credibility, and not the number, of the witnesses, and their credibility was for

the jury": *Lincoln v. Christian*, 94 Pa. Superior Ct. 145, at page 150. See, also, *Weiermuller v. American Ice Co.*, 89 Pa. Superior Ct. 278, 280.

The trial judge also saw and heard the witnesses. "If the verdict was against the weight of the evidence, the court below should have so found and granted a new trial *(Maloy v. Rosenbaum Co.*, 260 Pa. 466 [103 A. 882]; *Hartig v. American Ice Co.*, 290 Pa. 21 [137 A. 867]); but this court will not set aside a verdict which is supported by evidence, merely because, judged by the record, it is against the preponderance of the evidence: *Lodge v. Stone*, 85 Pa. Superior Ct. 164. The action of the court below in refusing to grant a new trial will not be reviewed unless there is an abuse of discretion, which does not appear in this case": *Coyne v. John Gibbons Coal Co.*, 314 Pa. 502, at page 506, 172 A. 653, at page 654.

The granting or refusing of a new trial is largely within the discretion of the trial court, and, in the absence of clear error or a palpable abuse of discretion, such an order will not be reversed on appeal. *Isaac v. Davis et ux.*, 327 Pa. 401, 194 A. 401.

Appellant has shown no abuse of discretion by the court below in refusing to grant a new trial, and we find none in the record. Counsel for appellant has not pointed out any unusual feature which would make the established rule inapplicable in the instant case.

The jury might have found otherwise, but there was ample evidence to sustain the verdicts in favor of plaintiffs.

Assignments of error are overruled. Judgments are affirmed.